IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 1:23-cv-02594-SKC-TPO

DELWIN LESTER,

    Plaintiffs,

V.

SHADOW MOUNTAIN MANAGEMENT CORPORATION, *et al.*,

    Defendants.

## ORDER RE: MOTION TO DISMISS (DKT. 11)

From May 14, 2018, to November 10, 2022, Plaintiff Delwin Lester worked as a licensed Nursing Home Administrator at Hildebrand Care Center (Hildebrand), which is owned by Defendant The Grand Lodge of the Independent Order of Odd Fellows of Colorado (Odd Fellows) and operated by Defendant Shadow Mountain Management Corporation (Shadow Mountain).[1] Dkt. 1, ¶¶2-3, 7. Hildebrand is a for-profit nursing home and is governed by the Shadow Mountain Board of Directors. *Id*. at ¶¶ 8, 11.

According to the allegations in the Complaint, which this Court accepts as true for purposes of the Motion, for years, Shadow Mountain charged Hildebrand "service

---

[1] Odd Fellows also owns Shadow Mountain and other health care facilities in Colorado. Dkt. 1, ¶3.

1

fees," despite no services being provided in exchange for the money. *Id.* at ¶13. The fees, which were paid in part by Medicaid, Medicare, and other state and federal funds, were then funneled to Odd Fellows. *Id.* at ¶¶14-15.

In 2021, Katherine Baxter, a then employee of another Odd Fellows facility, filed a whistleblower report to Shadow Mountain and the United States Department of Housing and Urban Development (HUD) regarding a similar "service fee" being paid by her facility and asserting that these fees violated the False Claims Act. *Id.* at ¶16. Bud Corey, Chairman of the Shadow Mountain Board of Directors, and Plaintiff worked to respond to Ms. Baxter's report and ultimately agreed that the "service fees" were legally problematic. *Id.* at ¶¶17-18. Plaintiff was named as a witness in the HUD investigation, and Mr. Corey ended the "service fees" disbursements from Hildebrand to Shadow Mountain. *Id.* at ¶¶19-20.

Jay Fernandez, Chairman of the Odd Fellows Board of Trustees was furious at Ms. Baxter, who was ultimately forced to resign in retaliation for her whistleblowing activities. *Id.* at ¶¶21-22. Mr. Fernandez's "wrath" extended to anyone who had supported Ms. Baxter, including Plaintiff, and Mr. Fernandez remained furious with Mr. Corey and Plaintiff long after the "service fees" were eliminated. *Id.* at ¶¶21, 25-26. And to learn the identities of other whistleblowers and remove dissenting voices, Mr. Fernandez demanded a list of all complaints filed against Odd Fellows. *Id.* at ¶¶23-24.

2

In addition to his actions regarding the False Claims Act, Plaintiff also submitted whistleblower complaints regarding Odd Fellows' alleged violations of Colorado employment laws and federal tax laws. *Id*. at ¶30. Specifically, Plaintiff voiced concerns regarding Odd Fellows' hiring of Chad Parker as the Director of Operations at the Grand Lodge. *Id*. at ¶31. According to Plaintiff, Odd Fellows hired Mr. Parker without posting the job as required by Colorado's Equal Pay Transparency Rules and in violation of the federal tax code. *Id*. at ¶¶33-34. And Plaintiff attempted to obtain information from Shadow Mountain board members in order to comply with Colorado laws requiring facility audits prior to receiving Medicaid and Medicare funding. *Id*. at ¶¶48, 50. However, after Plaintiff's attempt in October 2022 to obtain the necessary audit information, Mr. Parker terminated him without cause. *Id*. at ¶¶54-58.

Plaintiff filed this case on October 4, 2023. Dkt. 1. He asserts claims of retaliation pursuant to the False Claims Act and the Colorado Equal Pay for Equal Work Act, and a claim of wrongful termination in violation of public policy. Defendants argue Plaintiff has failed to state any claims for relief and move for dismissal of this action in its entirety pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. 11.

The matter is fully briefed, and no hearing is necessary. Having considered the Complaint, the Motion to Dismiss and related filings, and the controlling law, the Court grants Defendants' motion in part and denies it in part.

## A. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (cleaned up).

The *Twombly/Iqbal* pleading standard first requires the court to identify which allegations "are not entitled to the assumption of truth" because, for example, they state legal conclusions or merely recite the elements of a claim. *Id.* It next requires the court to assume the truth of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. In this analysis, courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012). The standard is a

4

liberal one, however, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009).

## B. ANALYSIS

### 1.   Retaliatory Discharge – False Claims Act

The False Claims Act (FCA) "imposes liability for submitting false statements to the government to claim additional payment or to avoid payment of an obligation." *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*, 79 F.4th 1262, 1270 (10th Cir. 2023) (citing 31 U.S.C. § 3729(a)(1)(A), (G)). In addition, the FCA prohibits "retaliation for 'lawful acts done by the employee … in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.'" *Id.* (quoting 31 U.S.C. § 3730(h)(1)). To prevail on an FCA retaliation claim, Plaintiff must show: (1) he was engaged in a protected activity; (2) Defendants had notice that he was engaged in a protected activity; and (3) Defendants terminated him because of his engagement in a protected activity. *United States ex rel. Sorenson*, 48 F.4th 1146, 1158–59 (10th Cir. 2022). Defendants argue the allegations are insufficient to support the notice and causation elements. The Court disagrees.

#### a. Notice

To establish notice, a plaintiff's "actions must have conveyed to [the defendant] that he was attempting to stop [the defendant] from (1) engaging in fraudulent

5

activity to avoid paying the government an obligation or (2) claiming unlawful payments from the government." *Barrick*, 79 F.4th at 1271 (citing 31 U.S.C. § 3730(h)(1)). The defendant "does not need to know the activity violates the FCA specifically" and the plaintiff "does not need to have furthered a qui tam action." *Id*.

According to the allegations, Ms. Baxter submitted whistleblowing reports to Defendant Shadow Mountain and HUD regarding fraudulent service fees, and she explained that Shadow Mountain was violating the FCA every time it was paid for unrendered services. Dkt. 1, ¶16. Plaintiff and Mr. Corey agreed with Ms. Baxter's assessments and Plaintiff was named as a witness in the HUD investigation into the FCA violation. Plaintiff and Mr. Corey also concluded that payments from Hildebrand to Shadow Mountain were similarly problematic. While Plaintiff's emails to Mr. Fernandez regarding the payments may not specifically state he is attempting to stop the fraudulent payments, his emails were apparently made in connection to and in conjunction with Ms. Baxter's whistleblower conduct, which was explicit in its efforts to prevent fraud.

The Complaint also alleges that Mr. Fernandez was furious with Ms. Baxter and anyone who supported her, including Plaintiff. *Id*. at ¶21. And Mr. Fernandez seems to acknowledge Plaintiff's attempts to prevent fraudulent payments in his email wherein he stated: "Well, it appears that [Mr. Corey] and [Mr. Lester] have decided to join the others that do not want to fund [SMMC] regardless of the services provided." *Id*. at ¶26. Moreover, Defendants do not address the fact that Plaintiff was

6

actively working and communicating with Mr. Corey—who at the relevant time was Chairman of the Board of *Defendant* Shadow Mountain—about Ms. Baxter's concerns and his own.

"Notice does not require magic words," *Barrick*, 79 F.4th at 1272, and construing these allegations together and in the light most favorable to Plaintiff, the Court concludes Plaintiff has plausibly alleged that Defendants, via Mr. Fernandez and Mr. Corey, had notice Plaintiff was attempting to stop Defendant from claiming unlawful payments from the government.

### b. Causation

"Causation can be shown by a 'very close temporal proximity' between a protected activity and an adverse employment action." *Dunn v. Shinseki*, 71 F. Supp. 3d 1188, 1192 (D. Colo. 2014) (quoting *O'Neal v. Ferguson Const. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)). The Tenth Circuit has "held that a one and one-half month period between a protected activity and adverse action may, by itself, establish causation, but a three-month period, standing alone, is insufficient to establish causation." *Miller v. Inst. for Def. Analyses*, 795 F. App'x 590, 596 (10th Cir. 2019) (cleaned up). Where temporal proximity alone is insufficient, a plaintiff must offer additional allegations to establish causation. *Dunn*, 237 F. Supp. 3d at 1192.

In this case, Plaintiff alleges he sent his whistleblowing email in late May or early June of 2022, and he was named as a witness in Ms. Baxter's HUD investigation in June 2022. Dkt. 1, ¶¶19, 26-29. Although he was terminated five months later, in

7

November 2022, the Court concludes that other of Plaintiff's allegations plausibly establish causation. Chief among these are the allegations that Mr. Fernandez demanded a list of all complaints or reports made against Defendants and that he demanded this information to learn the identities of whistleblowers and remove dissenting voices. Dkt. 1, ¶¶23-24. To be sure, Plaintiff alleges Ms. Baxter was forced to resign in retaliation for her own whistleblowing activities and that Mr. Fernandez extended his wrath to anyone who had supported Ms. Baxter, including Plaintiff. *Id.* at ¶¶21-22. Taken together and construed in the light most favorable to Plaintiff, these allegations support a plausible inference that Plaintiff was terminated, at least in part, in retaliation for his FCA whistleblower activities. Dismissal of this claim is not appropriate at this stage of the proceedings.

**2.      Retaliatory Discharge – Colorado Equal Pay for Equal Work Act**

Plaintiff contends Defendants also retaliated against him because he filed a complaint with the Colorado Department of Labor and Employment regarding Defendants' alleged violations of the Colorado Equal Pay for Equal Work Act (Equal Pay Act). For this claim, the Court presumes, without deciding, that Plaintiff can assert such a cause of action but nevertheless dismisses the claim.

According to the Complaint, Plaintiff first notified Defendants of his concerns regarding their failure to comply with the Equal Pay Act in November 2021, and he filed his whistleblower complaint that same month. Dkt. 1, ¶¶ 35-41. Plaintiff was not terminated until a year later in November 2022. Unlike Plaintiff's FCA claim,

8

however, the Complaint contains no additional allegations to support a plausible inference that Plaintiff's Equal Pay Act whistleblower activity was the reason for his termination. Rather, all the additional allegations supporting an inference of retaliation are tied to his FCA whistleblower activities, which as alleged, differ from his alleged Equal Pay Act activities. Without more, one year between the protected conduct and the adverse action is too long to establish causation. Thus, this claim shall be dismissed without prejudice.

### 3. Wrongful Termination in Violation of Public Policy

Turning to Plaintiff's third claim, he alleges that during his employment, he raised concerns regarding Defendants' violations of the FCA, the Equal Pay Act, federal tax laws, and Colorado laws requiring facility audits prior to receiving Medicaid and Medicare funds. Dkt. 1, ¶113. He contends Defendants retaliated against him for raising these concerns and that doing so violates public policy. Defendants argue Plaintiff's claims must be dismissed because statutory remedies for these purported violations already exist. The Court agrees in part.

In Colorado, a claim for wrongful discharge in violation of public policy "evolved as an exception to the at-will employment doctrine and is designed to provide a remedy for unlawful adverse employment actions where no cause of action for breach of contract would lie." *Caspar v. Lucent Techs., Inc.*, 280 F. Supp. 2d 1246, 1249 (D. Colo. 2003). Colorado courts, however, have specifically disallowed its application where a statute provides a wrongful discharge remedy. *Martin Marietta Corp. v.*

9

*Lorenz*, 823 P.2d 100, 107, n.5 (Colo. 1992) (confirming there would be no public policy exception to the at-will employment doctrine when a statute at issue provides a remedy). Here, Plaintiff acknowledges his wrongful termination claim is based, at least in part, on the same facts underlying his FCA claim. Dkt. 26, p.12 n.6. And he seems to concede that to the extent this claim is based on concerns regarding tax laws, the Taxpayer First Act provides him with a viable statutory remedy. *Id.* at p.11 n.5. Thus, Plaintiff's claim shall be dismissed with prejudice regarding these underlying allegations.

With respect to Plaintiff's allegations regarding the Equal Pay Act, the Court again does not address whether the statute creates a cause of action or remedy for Plaintiff's particular allegations. Instead, presuming *arguendo* it does, the Court nevertheless dismisses the claim for the same reasons explained above. The allegations do not plausibly allege causation.

Finally, as to Plaintiff's contention he was fired because he raised concerns about Colorado laws requiring audits prior to receiving Medicaid and Medicare funds, Defendants state in passing that this allegation was part of Plaintiff's FCA retaliation claim and, as such, should be dismissed because the FCA already provides relief. This argument is woefully underdeveloped and cursory, and therefore, the Court does not address it. *See A Brighter Day, Inc. v. Barnes*, 860 F. App'x 569, 575 (10th Cir. 2021) (declining to address argument that was underdeveloped and contained "mostly general legal statements and empty platitudes"); *Tillmon v. Douglas Cty.*, 817 F.

10

App'x 586, 589-90 (10th Cir. 2020) (declining to address argument where party's analysis was "cursory at best"). Further, Defendants do not address whether these Colorado audit laws already provide a statutory remedy.

Construing the pleadings in the light most favorable to Plaintiff, the Court reads this allegation as a stand-alone basis for his wrongful termination claim. And because Plaintiff alleges a close temporal proximity—he was terminated one month after he attempted to obtain information for the Colorado audit (Dkt. 1, ¶¶54-58)—he has plausibly alleged causation. *Miller*, 795 F. App'x at 596. Thus, this facet of Plaintiff's wrongful termination claim survives.

*   *   *

For the reasons shared above, the Court respectfully GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss (Dkt. 11). Within 14 days of this Order, the parties shall contact Magistrate Judge Timothy P. O'Hara's chambers to set a Scheduling Conference and commence with discovery.

DATED: June 24, 2025.

BY THE COURT:

S. Kato Crews
United States District Judge

11